### 604.   SUTTON et al. v. GRAY LUMBER COMPANY.

In January, 1882, S. conveyed to B. "all the pine timber suitable for saw logs of every size and dimension" on a given lot of land, "provided the same be cut within five years from date." In December, 1882, S. conveyed to P. the land lot on which the said timber was situated,— the deed containing this clause following the description of the land:

"The sawmill timber heretofore sold to Henry Banks excepted." *Held,* that the timber on the described land lot, not cut within the five years, did not revert, at the expiration of the time limited, to S. or his heirs, but became the property of the then owner of the land.

Action of trespass, from city court of Douglas—Judge Roan. June 20, 1907.

Submitted October 30, 1907.—Decided January 15, 1908.

*Rogers & Heath, F. Willis Dart,* for plaintiffs.

*Lankford & Dickerson,* for defendant.

HILL, C. J. On January 16, 1882, George W. Slade executed to Henry Banks a deed conveying "all the pine timber suitable for saw logs of every size and dimension, situated and being on the north half of lot 403, 10th district of Berrien county, 245 acres, provided the same be cut within five years from date." On December 16, 1882, the said George W. Slade executed a deed to Mathew E. Patton, conveying to him, "all that tract or parcel of land situate, lying, and being in said county of Berrien, known and distinguished as the north half of lot 403 in the 10th district of originally Irwin, now Berrien county, containing 245 acres more or less. *The sawmill timber heretofore sold to Henry Banks excepted.*" Both of these deeds were for a named consideration, and were duly executed and recorded. Henry Banks, the grantee in the first deed above mentioned, did not exercise his right under it to cut and remove any timber on the said land lot during the five years as limited in said deed, nor did he convey his right to the timber to any other person. In 1899 the Gray Lumber Company, by virtue of a conveyance from Mathew E. Patton, entered upon the lot of land conveyed by Slade to Patton, and cut and removed therefrom all of the pine timber located thereon suitable for sawmill purposes, and manufactured it into lumber. The plaintiffs in error brought an action of trespass against the Gray Lumber Co., claiming to be the true and lawful owners of four fifths of the half interest in this timber so cut and removed and manufactured into lumber, alleging in their petition that they were the heirs at law of the said George W. Slade, and, as such, entitled to the timber. The defendant filed general and special demurrers to the petition. The special demurrers were met by appropriate amendments, and the general demurrer was sustained and the petition dismissed.

The general demurrer was based on the legal proposition that the deed from Slade to Banks did not contain any provision or stipulation that the timber which remained upon the land lot at the end of five years should revert to the grantor or to any one else, and that at the expiration of the five years the timber which then remained upon the tract became the property of the then owner of the soil, and not Slade or his heirs. It will thus be seen that the only question submitted to this court for decision arises upon the construction of the two deeds,—the one from Slade to Banks in January, 1882, conveying all the sawmill timber on land lot 403, and the deed from Slade to Patton, December, 1882, conveying the said land lot. In other words, at the expiration of the five years provided in the first-mentioned deed as the limit of time in which the grantee, Banks, was to cut the timber on the land lot, did the timber remaining on the lot, not then cut, revert to the grantor, Slade, or his heirs, or did the timber then remaining on the land lot pass to the then owner of the land, under the deed from Slade to Patton? What did Slade convey to Banks by his deed of January, 1882? He conveyed to him "all the pine timber suitable for saw logs of every size and dimension on the north half of land lot 403, 10th district of Berrien county." This conveyance was not unconditional, but was limited by the proviso that the timber was to be cut within five years from the date of the conveyance. In other words, whatever amount of timber was cut within the five years, the title thereto passed, under the terms of the deed. If none was cut within the five years, the title to none vested in the grantee, and all that remained on the land lot at the expiration of the five years, uncut, was a part of the realty, and the title to the said timber passed to whomever owned the realty at the expiration of the five years. When Slade, in December, 1882, by his warranty deed conveyed in fee to Patton the north half of the same lot of land on which was located the timber he had previously sold conditionally to Banks, he conveyed title into Patton to everything on the land lot, except the timber which he had previously sold to Banks. If Banks, within the five-year limit, cut none of the timber on the land lot, his estate was fully determinable, and the title to all of the timber then standing on the land lot uncut passed to the owner of the fee in the land. In other words, the deed from Slade to Patton con-

veyed all of the land lot, including the timber thereon, subject to the right of Banks within the five years to cut the timber on it. The exception contained in the deed from Slade to Patton was not the sawmill timber on the land lot, but "the sawmill timber heretofore sold to Henry Banks;" and all that was sold to Henry Banks was such timber as he might cut on the land lot within the five years. The exception noted would have been good without having been placed in the deed from Slade to Patton; because the deed from Slade to Banks had been previously recorded; but it was apparently inserted in the deed out of abundance of caution, to protect the warranty of the grantor to Banks, and not for the purpose of reserving any right in the timber to the grantor, Slade; and also to protect the right in said timber which had been previously granted to Banks. If Slade had intended to reserve any estate in the timber for himself after the five years expired, he would have used apt words of reversion in the deed to Patton. It is perfectly plain that if Banks cut no timber at all during the five years, none was sold to him; for the office of the proviso contained in his deed was to limit his right and title to such timber as he might cut during the five years. In other words, his general right to the timber on the land lot was limited and restricted by the proviso.

We do not think that these two deeds are at all ambiguous, and the construction which we here place upon them is the only reasonable legal construction. Nor is this construction at all at variance with the decision of the Supreme Court in the case of *Levis* v. *Parrott Lumber Co.,* 119 *Ga.* 476, which is relied upon by the plaintiffs in error. In that case the conveyance from the original owner of the soil and timber to the "sawmill and turpentine privileges" on the lot of land expressly provided: *"all timber remaining [on said land lot] to revert"* to the grantor after a period named, to wit, at the expiration of eight years. In the case sub judice, no provision was made, in the deed from Slade to Banks, that the timber remaining on the land at the end of five years should revert to Slade, the grantor, or to any one else. In other words, this conveyance contained no reversionary clause; and at the end of the period of five years, without such clause, it necessarily remained as a part of the realty, and was the property of whomever at that time had title to the realty. Standing tim-

ber is realty. *Morgan* v. *Perkins,* 94 *Ga.* 355; *Coody* v. *Gress-Lumber Company,* 82 *Ga.* 793. In the *Levis* case, supra, the party who bought the land subsequently to the lease or conveyance of the timber bought it with notice that the original owner of the soil had sold the timber thereon, but had provided in the deed made to the timber that at the expiration of eight years mentioned therein, the timber not cut and removed from the land sold should revert to the grantor. In the present case, when Patton bought the land in December, 1882, on which the timber in controversy was situated, he did so with the express notice that he bought the fee in the land which included the timber thereon, except such timber as was sold to Banks in January previous, and that this exception was limited to the timber that Banks might cut on said land during five years from the date of the deed. Instead of being notice of any reversionary interest in the timber to Slade, there was notice, by plain implication, of no such reversionary interest in the timber. We think the construction placed upon these two deeds together is in entire harmony with the decisions of the Supreme Court in *McRae* v. *Stillwell,* 111 *Ga.* 654, *Morgan* v. *Perkins,* 94 *Ga.* 352, and the decisions cited from other courts in the very able brief of the learned counsel for the plaintiffs in error. The action of trespass, brought by the plaintiffs in error as the heirs at law of Slade, was properly dismissed on demurrer.

*Judgment affirmed.*